# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHEMETRA HARRISON, | ) | Case No. CV 09-07291-JEM |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | REVERSING DECISION OF |
| | ) | COMMISSIONER AND REMANDING |
| MICHAEL J. ASTRUE, | ) | FOR FURTHER PROCEEDINGS |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PROCEEDINGS

On October 8, 2009, Chemetra Harrison ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security disability insurance benefits.  The Commissioner filed an Answer on April 15, 2010.  On June 17, 2010, the parties filed a Joint Stipulation ("JS").

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the Magistrate Judge.  The matter is now ready for decision.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and remanded for further proceedings in accordance with law and with this Memorandum Opinion and Order.

**BACKGROUND**

Plaintiff is a 47 year old female who was determined to have the medically determinable severe impairments of back disorder and arthritis.  (AR 14.)  She alleges an onset date of March 16, 2007.  (AR 11.)  She has not engaged in substantial gainful activity since that date.  (AR 14.)

Plaintiff filed an application for Title II Social Security disability benefits on June 29, 2007.  (AR 11.)  She alleged back pain, hip pain, knee pain, right shoulder pain, neck pain, and depression.  (AR 120.)  The claim was denied on October 24, 2007.  (AR 11, 54.)  Plaintiff filed a timely request for hearing, which was held on April 3, 2008, in Los Angeles, California, before Administrative Law Judge ("ALJ") Alexander Weir III.  (AR 11.)  The Claimant appeared and testified and was represented by counsel.  Vocational expert Heidi Paul also appeared and testified.  (AR 11.)

The ALJ issued an unfavorable decision on February 19, 2009.  (AR 11-19.)  The ALJ determined that Plaintiff's back disorder and arthritis were severe, but that her other physical and mental impairments were not.  The ALJ then concluded that, notwithstanding Plaintiff's severe and non-severe impairments, she had the residual functional capacity ("RFC")[1] to perform light work with some limitations, including use of a cane for prolonged ambulation, and could perform her past relevant work as a cashier and teacher's aide.  (AR 17-18.)  Accordingly, the ALJ determined that Plaintiff was not under a disability as defined in the Social Security Act.  (AR 18.)

The Appeals Council denied review on August 4, 2009.  (AR 1.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that Plaintiff raises as grounds for reversal are as follows:

1.  Whether the ALJ properly assessed Plaintiff's credibility.

---

[1]   Residual functional capacity is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

2.  Whether the ALJ properly assessed Plaintiff's residual functional capacity when he omitted key objective evidence from his summary of the medical evidence of record in his decision.

3.  Whether the ALJ properly assessed the lay witness testimony of Flossie Harrison, the Plaintiff's mother.

## DISCUSSION

The Court reverses the ALJ's decision and remands for further proceedings.  The ALJ did not properly consider Plaintiff's subjective pain symptoms, undermining the ALJ's RFC assessment and his conclusion that Plaintiff can perform her prior relevant work.

### A.    Standard Of Review

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "'more than a mere scintilla' but less than a preponderance."  Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (internal quotations and citations omitted).  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**B.     The Sequential Evaluation**

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine "whether the claimant is presently engaging in substantially gainful activity."  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantially gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work.  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The ALJ, however, must consider the combined effect of all the claimant's impairments on his or her ability to function, regardless of whether each alone is sufficiently severe.  Id.  Also, the ALJ must consider the claimant's subjective symptoms in determining severity.  Id.

Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Parra, 481 F.3d at 746.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.

Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that, at all times, the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**C.    Plaintiff's Medical Condition**

Plaintiff has complained consistently of back pain, hip pain, knee pain, shoulder pain, neck pain, and depression.  (AR 26, 28, 120, 128.)  She takes 800 mg. prescribed Motrin, which causes fatigue and drowsiness.  (AR 31, 42, 161, 171.)  She also was prescribed Vicodin but stopped taking it because it upset her stomach.  (AR 31, 42, 43.)

Plaintiff's orthopedic difficulties began in 2002 when she injured her back and hip lifting heavy objects at work.  (AR 35-36, 191.)  The pain from musculoskeletal impairments worsened thereafter and she stopped work in March 2007.  (AR 37.)

Plaintiff underwent extensive testing, EMGs, MRIs, and examinations starting in February 2006 (AR 297), with the following findings:

4/10/06 - MRI, LEFT WRIST, IMP: 1) Evidence of enlargement of the median nerve with findings consistent with carpal tunnel syndrome.  2) No evidence of fracture or triangular fibrocartilage tear is present.

MRI, LEFT HAND, IMP:  1)   Mild to moderate hypertrophic changes are present.  2) No evidence of fracture or dislocation present.

4/11/06 - MRI, RIGHT SHOULDER, IMP: 1)  Evidence of findings consistent with moderate impingement is present. 2) Moderate hypertrophic changes seen at the AC joint.  3) No evidence of rotator cuff tear is present.

MRI, RIGHT WRIST, IMP: 1) Evidence of borderline enlargement of the median nerve present.  The possibility of early CTS cannot be excluded. 2)  No evidence of fracture or triangular fibrocartilage tear is present.  3) Hypertrophic changes are seen at the base of the first metacarpal bone.

MRI, RIGHT HAND, IMP:  1) Mild to moderate hypertrophic changes present.  2) No evidence of fracture or dislocation present.

MRI, LEFT SHOULDER, IMP:  1)  Evidence of findings consistent with mild to moderate impingement with tendinitis is present.  2) No discrete rotator cuff tear is present.  3) Mild hypertrophic changes are seen at the AC joint. 4) Increased signal seen at the superior lateral margin of the rotator cuff with findings consistent with tendinitis present.

4/12/06 - MRI, LEFT HIP, IMP: 1) Mild hypertrophic changes of the left hip joint.   2) No evidence of fracture or vascular necrosis is present.   3) Evidence of enlargement of the uterus with findings suggestive of possible fibroid changes.  Pelvic US may help further eval.

MRI, LUMBAR SPINE, IMP: 1)  L3-L4 disc level shows a 1-2mm posterior disc protrusion present.  The neural foramina appear patent. 2) L4-L5 disc level shows a 2mm posterior disc protrusion present.   Moderate hypertrophic facet changes are present.   The neural foramina appear patent.  3) L5-S1 disc level shows a 1-2mm posterior disc protrusion present.  Mild hypertrophic facet changes are present.  The neural foramina appear patent.

MRI, LEFT KNEE, IMP:  1) Grade I signal is seen in the medial and lateral meniscus.  Grade II signal is seen in the lateral meniscus.  2) Evidence of decreased signal seen in the mild portion of the patella consistent with grade I chondromalacia present.  3) No evidence of cruciate tear present. (AR 298-99.)  Additional EMG testing yielded findings of right hand carpel tunnel syndrome (AR 218), peroneal neuropathy and left lumbosacral plexopathy.  (AR 195, 375.)

Plaintiff's primary treating physician from 2006 through the date of the application was Dr. Payendeh, for whom all of the above testing was done.  Dr. Payandeh's diagnoses

1    were lumbar strain/sprain, and bilateral knee, shoulder and wrist injury.  (AR 289-92.)  Dr.

2    Payendeh prescribed a cane for standing and walking.  (AR 315.)

3         In 2006, orthopedic consultant John Larsen diagnosed right shoulder impingement

4    syndrome with joint pain, bilateral wrist strain, lumbar disc protrusion, left trochanteric

5    bursitis and bilateral knee sprain.  (AR 303.)  In 2007, Dr. To reported back, neck and hip

6    sprain.  (AR 251, 262.)  Kaiser Permanente also treated Plaintiff in 2007 for sprain in the

7    back, neck and hip.  (AR 15.)

8         A consulting orthopedic evaluation by Dr. Augustine Conduah dated September 2,

9    2007, diagnosed Plaintiff with internal derangement of the right shoulder, chronic low back

10    pain, and subjective knee pain.  Dr. Conduah's RFC assessment, which was adopted by the

11    ALJ, was that Plaintiff was capable of lifting 20 pounds occasionally and 10 pounds

12    frequently, can stand or walk four hours out of an eight hour work day, and sit for 6 hours.

13    Dr. Conduah indicated Plaintiff is unable to walk on uneven terrain and that a cane is

14    necessary for balance and for prolonged ambulation.  (AR 16.)  Dr. Conduah, however, did

15    not review any medical records.

16         Plaintiff also was diagnosed with depressive disorder NOS.  The ALJ acknowledged

17    the impairment of mental depression but concluded it was non-severe.  (AR 14-15.)  Plaintiff

18    does not challenge that determination.

19         At the hearing, Claimant testified that she stopped working because of severe pain

20    (AR 26.)  She said she could not work because of pain in her neck, shoulder, back, hips,

21    and knees.  (AR 28.)  She testified that she cannot sit or stand for more than 30 minutes

22    without pain or discomfort.  (AR 30.)  She indicated significant limitations in daily activities.

23    (AR 32-34.)  Her mother does most of the cooking and cleaning because Plaintiff is in pain.

24    (AR 33.)  She needs help getting in and out of the bathtub.  (AR 33.)  She uses a cane,

25    which was prescribed, for walking, even in the house.  (AR 42-43.)  Her mother Flossie

26    Henderson also testified at the hearing, confirming Claimant's testimony about her

27    limitations, including that she cannot walk for more than 30 minutes.  (AR 49-52.)

28

1  Ms. Henderson also filed a third-party statement that confirmed Plaintiff's limitations.  (AR

2  136-43.)

3      The vocational expert, Heidi Paul, testified that, based on the ALJ's RFC

4  assessment, Claimant can perform her prior work as a cashier and teacher's aide as it was

5  actually and/or generally performed.  (AR 18, 45-46.)  These were light exertional jobs.  (AR

6  17, 45-46.)  When a restriction was added of a break after every 30 minutes, however,

7  Ms. Paul indicated that Claimant would not be able to perform any work.  (AR 47-48.)

8      **D.   The ALJ Improperly Discounted Plaintiff's Subjective
            Pain Symptoms And Committed Other Errors As Well**

9      The ALJ gave little weight to Claimant's testimony because he found her "not fully

10 credible" (AR 17) and because "Claimant lacks general credibility."  (AR 17.)  Plaintiff

11 alleges that the ALJ improperly discredited her credibility.  Plaintiff is correct.

12     The test for deciding whether to accept a claimant's subjective symptom testimony

13 turns on whether the claimant produces medical evidence of an impairment that reasonably

14 could be expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947

15 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.

16 1998); Smolen, 80 F.3d at 1281-82 esp. n.2.  The Commissioner may not discredit a

17 claimant's testimony on the severity of symptoms merely because they are unsupported by

18 objective medical evidence.  Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  If the

19 ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make

20 findings which support this conclusion."  Bunnell, 947 F.2d at 345.  The ALJ must set forth

21 "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

22 discredit claimant's testimony."  Thomas v. Barnhart, 278 F.3d 949, 958 (9th Cir. 2002); see

23 also Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345-

24 46.  Unless there is evidence of malingering, the ALJ can reject the claimant's testimony

25 about the severity of a claimant's symptoms only by offering "specific, clear and convincing

26 reasons for doing so."  Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722.

27

28

1  The ALJ must identify what testimony is not credible and what evidence discredits the

2  testimony.  Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

3        In this case, the ALJ failed to offer any explicit conclusion that Claimant's medically

4  determinable impairments reasonably could be expected to cause the alleged symptoms.

5  The Court finds that there is sufficient evidence in the record of medical impairment that

6  reasonably could cause Plaintiff's alleged pain.  There was no finding, evidence or assertion

7  that Plaintiff was malingering.  Thus, the ALJ was required to offer specific, clear and

8  convincing reasons for discounting Plaintiff's pain symptoms.

9        The ALJ decision does not meet this high standard.  The ALJ offers but a paragraph

10  to support his rejection of Plaintiff's credibility.  (AR 17-18.)  None of the reasons proffered

11  are clear and convincing or supported by substantial evidence.

12        First, the ALJ relied heavily on the consulting orthopedist Dr. Conduah in rejecting

13  Plaintiff's credibility, as well as the medical record.  The fact that Plaintiff's allegations of

14  disabling pain are inconsistent with objective medical evidence, even if true, would not be

15  dispositive as a matter of law.  Bunnell, 947 F.2d at 345 ("once the claimant produces

16  objective evidence of an underlying impairment, an adjudicator may not reject a claimant's

17  subjective complaints based solely on a lack of objective evidence"); Rollins, 261 F.3d at

18  857 (subjective testimony cannot be rejected on "sole" ground that objective medical

19  evidence is lacking).  There must be other evidence to support rejection of Plaintiff's

20  subjective symptoms.

21        Although medical evidence is nonetheless a relevant if not dispositive factor,

22  (Rollins, 261 F.3d at 857; Smolen, 80 F.3d at 1285), in this case the medical evidence is not

23  compelling.  The ALJ relies on a consulting orthopedist who did not review any medical

24  records, many of which demonstrate musculoskeletal impairments that reasonably could be

25  expected to produce the alleged pain.  The ALJ gives no explanation for preferring the

26  opinion of an orthopedic consultant who saw Plaintiff but once and reviewed no medical

27  records over that of a treating physician who saw the Plaintiff repeatedly over many months

28

and was thoroughly familiar with the extensive medical records.  This is especially true in regard to Payendeh's prescription of a cane for walking standing.  The ALJ failed to explain why he preferred Dr. Conduah's assessment that a cane was needed only for prolonged ambulation in determining Plaintiff's RFC.  The Commissioner also refers to a notation by Dr. To that Plaintiff was in no acute distress (AR 250) but does not mention that Dr. To, despite his notation, diagnosed Plaintiff with back, neck and hip sprain, consistent with her pain allegations.  (AR 251, 262.)

Second, the ALJ asserts that Claimant has not sought recent, follow-up medical treatment.  (AR 17.)  An ALJ, however, may not draw inferences about an individual's symptoms from a failure to pursue medical treatment without first considering any explanations that a claimant may provide.  Social Security Ruling ("SSR") 96-7p at *7; 1996 WL 374186 at *7.  Plaintiff testified at the hearing that she no longer has health insurance. The ALJ acknowledged that Claimant is not insured for medical coverage in describing her hearing testimony (AR 17) but never considered that fact in rejecting her credibility.  This was error.  Plaintiff cannot be faulted if she cannot afford medical treatment.  Kent v. Astrue, 335 Fed. Appx. 673, 675 (9th Cir. 2009) (unpublished[2]) (ALJ cannot reject symptom testimony for not seeking treatment where claimant cannot afford it); Regenniter v. Commissioner, 166 F.3d 1294, 1296-97 (9th Cir. 1999) (ALJ cannot reject symptom testimony for not seeking treatment where claimant cannot afford medical treatment or medications); Riley v. Astrue, 2010 WL 1443858 at *3 (C.D. Cal.  2010) (unpublished) (failure to seek medical treatment is acceptable reason to discount pain testimony only if it is unexplained or inadequately explained).  Plaintiff's statement that she has no insurance is undisputed and renders any lack of continuing treatment an inappropriate basis for discounting her credibility.

Additionally, it appears that Plaintiff in fact has sought additional follow-up medical treatment from the Los Angeles Free Clinic.  (AR 32, 176.)  The ALJ fails to mention this

---

[2]  The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

1    fact, which obviously contradicts the ALJ's finding that Plaintiff has not pursued medical

2    treatment.  Also, the ALJ apparently did not request medical records from the Clinic.  This

3    too was legal error.  The ALJ has an independent duty to develop the record fully and fairly

4    and to assure that the claimant's interests are considered.  Tonapetyan v. Halter, 242 F.3d

5    1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d at 1288; Brown v. Heckler, 713 F.2d 441, 443

6    (9th Cir. 1983).  The ALJ has a basic duty to inform himself about facts relevant to his

7    decision.  Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring).  The

8    ALJ's duty to develop the record exists even when the claimant is represented by counsel.

9    The alleged lack of medical treatment is not a clear and convincing reason supported by

10   substantial evidence to support rejection of Plaintiff's credibility.

11        Third, the ALJ cited inconsistencies between Claimant's daily activities and her

12   claimed limitations.  An ALJ may rely on a contradiction between testimony and daily

13   activities in determining a claimant's credibility.  Morgan, 169 F.3d at 599-600.  The ALJ,

14   however, must find that a claimant's daily activities are transferable to a work setting.  Id. at

15   600 ("If a claimant is able to spend a substantial part of his day engaged in pursuits

16   involving the performance of physical functions that are transferable to a work setting, a

17   specific finding as to this fact may be sufficient to discredit a claimant's allegations").  One

18   does not need to be totally incapacitated to qualify for benefits.  Vertigan v. Halter, 260 F.3d

19   1044, 1050 (9th Cir. 2001); see also Reddick, 157 F.3d at 722 (9th Cir. 1988) (activities that

20   are sporadic and punctuated with rest do not support a finding that a claimant can engage in

21   regular work activities).

22        Here, the ALJ's statement that there is no medical evidence that Claimant cannot

23   perform normal activities of daily living (AR 18) is, as already noted, not dispositive.  The

24   assertion that Claimant does not engage in most activities of daily living because her mother

25   performs them (AR 17) in no way undermines the fact that Plaintiff cannot cook and clean

26   because of her pain, as supported by both Claimant's testimony and that of her mother.

27   The ALJ also cited Plaintiff's regular walks with her boyfriend and attending church on a

28   regular basis but made no finding that these activities are transferable to the workplace nor

explained how they would be translated to the workplace.  He also did not explain or demonstrate how they are inconsistent with Plaintiff's claims of disabling pain.  The record does not support the ALJ's characterization that Claimant took "regular" walks with her boyfriend; the walks were sporadic and not inconsistent with her testimony that she can walk but 30 minutes before resting.  As for church attendance, Claimant testified that she "tries" to go to church every Sunday but sometimes does not make it and even when she does she suffers back pain.  (AR 34.)  Plaintiff did not engage in these activities for a substantial part of her day.  None of these activities can be said to translate into sustained work activity eight hours a day, five days a week.  Plaintiff's daily activities are not inconsistent with her claimed limitations and are not a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's credibility.

The ALJ's fourth and final reason for discounting Plaintiff's subjective pain symptoms is the weakest.  The ALJ cited to Claimant's "appearance and demeanor at the hearing" (AR 18), but this conclusory statement means little because the ALJ fails to provide any factual detail.  Also, this sort of "sit and squirm" jurisprudence is not an appropriate basis for rejecting Plaintiff's credibility where there is objective evidence of physical impairments which reasonably could be expected to produce the pain symptoms alleged by a claimant. Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985.)

The ALJ decision contained other errors that undermine his rejection of Plaintiff's credibility, his RFC assessment, and his determination that Plaintiff can perform her prior work.  First, the ALJ did not consider or address substantial evidence bearing on those conclusions.  He failed to note that Dr. Payendah prescribed a cane as necessary for standing and walking.  (AR 315.)  He failed to mention the results of EMG testing demonstrating peroneal neuropathy and lumbasacral plexopathy in the upper extremities. (AR 375.)  He did not analyze Dr. Larsen's findings.  (AR 295-305.)  He did not consider the effect of Plaintiff's medications, which Plaintiff testified caused her fatigue and drowsiness. (AR 171.)  He did not address the testimony of Plaintiff's mother Flossie Henderson, who confirmed that Plaintiff could walk for only 30 minutes.  (AR 50.)  The ALJ is not required to

1   discuss every piece of evidence in the record, <u>Howard v. Barnhart</u>, 341 F.3d 1006, 1012

2   (9th Cir. 2003), but is required to explain why significant and probative evidence has been

3   rejected.  <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Much of the above

4   evidence not discussed by the ALJ appears to be probative.

5          Second, the ALJ decision does not appear to have considered the combination of

6   Plaintiff's severe and non-severe impairments in rejecting Plaintiff's credibility, assessing her

7   RFC and determining that she can perform her prior work.  An ALJ must consider a

8   claimant's illnesses in combination and "not be fragmentized in evaluating the effects."

9   <u>Beecher v. Heckler</u>, 756 F.2d 693, 694-95 (9th Cir. 1985).  An ALJ must consider the

10  combined effect of all of a claimant's impairments in his or her ability to function "without

11  regard to whether each alone was sufficiently severe."  <u>Smolen</u>, 80 F.3d at 1290.  Here,

12  Plaintiff suffered from a multitude of orthopedic ailments and a depressive disorder.  The

13  ALJ decision never considers the combined effect of all of Plaintiff's impairments in

14  assessing her pain symptoms.

15         The ALJ improperly discounted Plaintiff's credibility, which undermines the RFC

16  assessment and the determination that Plaintiff can perform her prior work.

17                                          **ORDER**

18         IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the

19  Commissioner of Social Security and remanding for further proceedings in accordance with

20  law and with this Memorandum Opinion and Order.

21         LET JUDGMENT BE ENTERED ACCORDINGLY.

22

23  DATED: <u>October 21, 2010</u>                      <u>    /s/ John E. McDermott    </u>

24                                          JOHN E. MCDERMOTT
                                          UNITED STATES MAGISTRATE JUDGE

25

26

27

28